IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-81698-Civ-Middlebrooks/Brannon

ANDREW PERRONG, on behalf of
himself and others similarly situated,

    Plaintiff,

vs.

BROADLEAF MARKETING & SEO, LLC,

    Defendant.
_____/

## DEFENDANT BROADLEAF MARKETING & SEO, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant BROADLEAF MARKETING & SEO, LLC ("BROADLEAF"), pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), or 12(f), hereby moves to dismiss or, in the alternative, strike Plaintiff's First Amended Complaint on the basis that this Court lacks subject matter jurisdiction and Plaintiff has failed to state a claim for relief. In support of this Motion, BROADLEAF respectfully directs the Court's attention to BROADLEAF's Memorandum of Law in Support of Its Motion to Dismiss below, and to any additional arguments or evidence to be properly presented in support of the requested relief in this motion.

### FACTUAL BACKGROUND

1. The Plaintiff filed the original Complaint against the Defendant on or about September 18, 2020.

2. The Plaintiff filed the First Amended Complaint against the Defendant on or about November 16, 2020.

3. Plaintiff's Count I of the First Amended Complaint alleges that BROADLEAF violated 47 C.F.R. § 64.1200(c) which prohibits telephone calls to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2).

4. The plain language of the TCPA as adopted by Congress is clear that the FCC's authority to create a national do-not-call registry is limited to "residential" subscribers. 47 U.S.C. § 227(c).

5. Despite this clear limitation, Plaintiff proposes a National Do Not Call Registry Class that is not limited to residential subscribers.

6. Count II of the First Amended Complaint alleges that the Defendant placed robocalls to the Plaintiff's residential phone number (215-947-XXXX) on June 26, 2020, July 14, 2020, August 14, 2020, and August 20, 2020 (collectively the "Disputed Calls").

7. Count II of the First Amended Complaint attempts to obtain liability for damages regarding the Disputed Calls under the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227.

8. However, on or about July 6, 2020 the Supreme Court of the United States decided the case of *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335 (2020) ("*AAPC*") which ruled that a part of 47 U.S.C. § 227(b)(1)(A)(iii) regarding robocalls was void in violation of the United States Constitution.

9. As such, for the reasoning outlined below, this Court lacks subject matter jurisdiction regarding any alleged robocalls that fall within the timeframe and scope of the unconstitutional Section 227(b)(1)(A)(iii).

10. The Defendant contends that any Disputed Call that has been alleged by the Plaintiff that falls within the scope of the unconstitutional Section 227(b)(1)(A)(iii) should be stricken from this matter, as well as any similar calls falling within Plaintiff's proposed Robocall Class.

11. Additionally, the Plaintiff has alleged a number of allegations that are not factual and are not related to the facts and circumstances of this matter under the general heading of "TCPA BACKGROUND." [DE – 12: ¶¶ 10 – 17].

12. The Plaintiff has also alleged instances of prior incidents involving the Defendant that are clearly not appropriate in the framing pleading. [DE – 12: ¶¶ 33 – 36].

13. Rule 8(a)(2), Federal Rules of Civil Procedure provides that, " [a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1), Federal Rules of Civil Procedure further provides that, "Each allegation must be simple, concise, and direct."

14. As ¶¶ 10 – 17 and ¶¶ 33 – 36 of the First Amended Complaint are neither "a short and plain statement" nor "simple, concise, and direct," they must be considered to be a "redundant, immaterial, impertinent, or scandalous matter" under Rule 12(f), Federal Rules of Civil Procedure and stricken from the First Amended Complaint.

WHEREFORE, the Defendant respectfully requests this Court to enter an Order GRANTING Defendant's Motion to Dismiss or, in the alternative, Motion to Strike.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Rule 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure provides that, "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion . . . (1) lack of subject-matter

jurisdiction;… (6) failure to state a claim upon which relief can be granted…" Rule 12(f), Federal Rules of Civil Procedure further provides that, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."

District Courts enjoy broad discretion in considering a motion to strike under Rule 12 of the Federal Rules of Civil Procedure. *See, Morrison v. Exec. Aircraft Refinishing, Inc.,* 434 F.Supp.2d 1314, 1317-18 (S.D. Fla. 2005). The purpose of a motion to strike under Rule 12 is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary efforts into immaterial matters. *See*, *Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017).

## I. SUMMARY OF COMPLAINT

Plaintiff has initiated this case against BROADLEAF as a putative class action for alleged violations of the TCPA. *See* First Amended Complaint, ¶ 2-4. His claims arise out of allegedly unsolicited prerecorded messages that BROADLEAF allegedly sent to his residential telephone. Plaintiff currently seeks to pursue two causes of action against BROADLEAF, each of which arise from the alleged calls to Plaintiff's Pennsylvania telephone number.

Plaintiff's first cause of action is based upon his claim that BROADLEAF violated the TCPA by making unsolicited calls to his residential telephone number which was registered on the National Do Not Call ("DNC") Registry. First Amended Complaint, ¶¶ 58-62. Plaintiff alleges in his second cause of action that BROADLEAF violated the TCPA by making prerecorded voice calls to Plaintiff's telephone. First Amended Complaint, ¶ 64. These calls allegedly occurred on June 26, July 14, August 14, and August 20, 2020. First Amended Complaint, ¶ 26.

**II.     PLAINTIFF'S PROPOSED CLASS ARISING OUT OF HIS FIRST CAUSE OF ACTION SHOULD BE DISMISSED**

Plaintiff ANDREW PERRONG ("PERRONG") has sued BROADLEAF for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). BROADLEAF moves to dismiss the proposed National Do Not Call Registry Class arising out of Plaintiff's first cause of action pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's first cause of action alleges that BROADLEAF violated 47 C.F.R. § 64.1200(c) which prohibits telephone calls to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2). The plain language of the TCPA as adopted by Congress is clear that the FCC's authority to create a national do-not-call registry is limited to "residential" subscribers. 47 U.S.C. § 227(c). Plaintiff's proposed class does not limit itself to calls received on a residential telephone line. As such, his proposed class fails as a matter of law.

   **A. Plaintiff's proposed National Do Not Call Registry Class arising from the First Cause of Action for Violation of 47 C.F.R. § 64.1200(c) Should be Dismissed**

In 1991, Congress adopted the TCPA, authorizing, *inter alia*, the creation of a national DNC Registry to protect residential subscribers from unwanted solicitations that were tying up their home phone lines. Specifically, 47 U.S.C. § 227(c) directed the Federal Communications Commission ("FCC" or "Commission") to initiate rulemaking proceedings "concerning the need to protect **residential** telephone subscribers' privacy rights" and granted the FCC authority to "a single national database to compile a list of telephone numbers of **residential subscribers** who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(1) – (3) (emphasis added).

The FCC did not answer Congress's call until 2003 when it promulgated 47 C.F.R. § 64.1200(c). *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report

and Order, 18 F.C.C. Rcd. 14014 (2003) ("2003 FCC Order"). The Commission's rules prohibit persons or entities from initiating telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R § 64.1200(c)(2). In adopting this rule, however, the FCC exceeded the scope of its authority by interpreting the term "residential subscriber" to include "wireless subscribers who ask to be put on the national do-not-call list." 2003 FCC Order at 14039. The FCC's interpretation is not entitled to deference because the plain language of the TCPA clearly distinguishes between "residential" and "wireless" lines, and the FCC therefore exceeded its authority when interpreting a "residential subscriber" to also include a "wireless subscriber".

      i.      **The Hobbs Act Does Not Prevent BROADLEAF From Challenging The Legality of the FCC's Interpretation of the Do Not Call Rules**

The Administrative Orders Review Act (Hobbs Act) provides that the federal courts of appeal have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of," certain final orders of the FCC. 28 U.S.C. § 2342(1). In 2019, the Supreme Court was asked to determine "whether the Hobbs Act's commitment of 'exclusive jurisdiction' to the courts of appeals requires a district court in a private enforcement suit," to follow final orders of the FCC interpreting the TCPA. *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019). Without fully deciding the issue, the Court found the analysis required examination of at least two threshold questions. The first, whether the rule in question was "legislative" or "interpretive" as an "interpretive rule . . . may not be binding on a district court." *Id*. The second, whether the party challenging the rule had "a 'prior' and 'adequate' opportunity to seek judicial review of the Order," because if not, the Hobbs Act may permit a challenge. *Id*; *see also Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, No. CV 18-1903, 2020 WL 2793954, at *14-15 (E.D. Pa. May 29, 2020)

(court applied this two-step analytical framework in determining it would not defer to an FCC ruling interpreting the term "advertisement" as used in the TCPA).

The FCC's order is best understood as an interpretive rule. Interpretive rules are "an expression of how the agency interprets the statute, as opposed to a legislative rule that carries the force of law." *United States v. Alvarado*, 5 F.3d 1425, 1430 (11th Cir. 1993). Courts have examined three "pertinent indicia" in determining whether a rule is legislative or interpretive. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 18 (D.C. Cir. 2019); *Warshauer v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009) (applying factors examined by D.C. Circuit in determining whether agency rule was interpretive or legislative). The first and "central" factor is "the language actually used by the agency." *Guedes*, supra (internal citation and quotations omitted). Second, courts consider "whether the agency has published the rule in the Code of Federal Regulations." *Id*. The third factor is "whether the agency has explicitly invoked its general legislative authority." *Id*; see also *Mauthe*, 2020 WL 2793954, at *14-15 (applying indicia articulated by D.C. Circuit in concluding FCC ruling was interpretive).

The first and central factor strongly indicates the FCC's 2003 FCC Order was interpretative. The pertinent language of the Order states:

> [W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. As indicated above, Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls. In addition, although Congress expressed concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers. Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

2003 FCC Order at 14039. Notably, the FCC's rule was based upon its "belie[f]" concerning the "overall intent" of the TCPA *Id*. Based upon this belief, the FCC created an interpretation that permitted a wireless subscriber to be treated as a "residential subscriber". *Id*. The FCC disclaimed the creation of any new rule on this subject in the Order, instead suggesting (wrongly) that this interpretation is the result Congress would like to see. The rule therefore purports to "clarif[y] the scope of an existing obligation rather than creating a new one." *Mauthe*, 2020 WL 2793954 at *16.

Next, the FCC mentioned, although did not directly publish, its interpretation in the Code of Federal Regulations. 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order.") Notably, nowhere else in the Code of Federal Regulations does the FCC refer back to Report and Order in such a fashion. *See generally* 47 C.F.R. § 64.1200. Every other subsection in this code lays out specific rules pertaining to communications regulated under the TCPA. *Id*. Clearly then, when the FCC wants to make a legislative rule, it knows how to publish one in the Code of Federal Regulations. It did not do so with respect to its interpretation of "residential subscriber" in the 2003 FCC Order. Thus, the fact that the FCC chose to generally reference its Report and Order, rather than explicitly publishing its interpretation of "residential subscriber" in the Code of Federal Regulations indicates that the FCC's rule should be considered interpretative.

Lastly, the FCC does appear to have issued the rule in question pursuant to its general legislative authority. In issuing the 2003 FCC Order, the FCC was purporting to act based upon "Congress's directives in the TCPA." 2003 FCC Order at 14018. This is also reflected by the fact the FCC engaged in notice and comment rulemaking, and the question was raised directly in the FCC's Notice of Proposed Rulemaking. In Re Rules & Regulations Implementing Tel. Consumer Prot. Act

of 1991, Notice of Proposed Rulemaking, 17 F.C.C. Rcd. 17459, 17491 (2002) ("We seek comment on the extent to which wireless subscribers may be considered 'residential' for purposes of the TCPA.") Even so, most of the pertinent indicia of an interpretive rule, including the one "central" to the determination, exist with respect to the FCC's 2003 interpretation of "residential subscriber". Accordingly, when considering the confluence of this pertinent indicia, the relevant part of the 2003 FCC Order addressing the meaning of "residential subscriber" is best understood as an interpretive rule.

However, even assuming that the FCC's rule was legislative, BROADLEAF may still challenge the rule because BROADLEAF did not have a "prior and adequate opportunity to seek judicial review of the Order." *PDR Network*, 129 S. Ct. at 2055. The FCC adopted the interpretation of a "residential" telephone line in question in 2003. 2003 FCC Order at 14039. However, BROADLEAF did not exist at the time the FCC adopted the 2003 Order, and was not formed until fourteen years later in 2017. *See DE 11-1 and 11-2,* Defendant's Request for Judicial Notice, incorporated herein by reference. Thus, it could not have challenged the FCC's order within the 60-day period provided by the Hobbs Act. 28 U.S.C. § 2344. In addition, because BROADLEAF did not participate in the FCC's rulemaking proceeding that produced the 2003 Order, BROADLEAF was not entitled to appeal the agency ruling. 28 U.S.C. § 2344 (limiting appeal rights to an "aggrieved" party); *Nat'l Ass'n of State Util. Consumer Advocates v. FCC*, 457 F.3d 1238, 1247 (11th Cir. 2006) (interpreting "party aggrieved" to mean a party that "participated in the agency proceeding").

BROADLEAF's ability to challenge the FCC's interpretation of "residential" is supported by the framework set forth under the majority's opinion in *PDR Networks*, in addition to the concurring opinion of four justices:

> The general rule of administrative law is that in an enforcement action, a defendant may argue that an agency's interpretation of a statute is wrong, at least unless

> Congress has expressly precluded the defendant from advancing such an argument. The Hobbs Act does not expressly preclude judicial review of an agency's statutory interpretation in an enforcement action. Therefore, in this enforcement action, PDR may argue to the District Court that the FCC's interpretation of the TCPA is wrong. The District Court is not bound by the FCC's interpretation of the TCPA. Rather, the District Court should interpret the TCPA under usual principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

*PDR Network*, 139 S. Ct. at 2058. The concurring justices recognized that the majority opinion did not reach this issue, and "this separate opinion remains available . . . to other courts in the future." *Id*.

This concurring opinion has since received strong endorsement by the concurring opinion of Justices Pryor, Newsom, and Branch in *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094 (11th Cir. 2019):

> [O]ur precedents have misconstrued the Act's grant of "exclusive jurisdiction" to the circuit courts "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" certain agency orders, 28 U.S.C. § 2342. Our precedents, *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453 (11th Cir. 2012), and *Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110 (11th Cir. 2014), interpret the Act to mean that an agency's interpretation of federal law in a final order is subject to only a single 60-day window for judicial review in a single circuit-court proceeding, outside of which no party to any proceeding in any court may question the agency's interpretation, no matter how wrong. Four justices of the Supreme Court have recently explained—with good reason and without any justice voicing a contrary interpretation—that the Act means no such thing and might well be unconstitutional if it did. See *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, ___ U.S. ___, 139 S. Ct. 2051, 2057, 2062–66, ___ L.Ed.2d ___ (2019) (Kavanaugh, J., concurring in the judgment); *see also id*. at 2056–57 (Thomas, J., concurring in the judgment). The Hobbs Act, correctly construed, does not require district courts adjudicating cases within their ordinary jurisdiction to treat agency orders that interpret federal statutes as binding precedent. Our precedents' interpretation of the Hobbs Act ignores the statutory context, generates absurd results, and raises serious constitutional doubts. In the earliest appropriate case, we should correct our mistake en banc.

*Id*. at 1106.

Accordingly, because BROADLEAF did not have a prior and adequate opportunity to seek judicial review of the FCC's 2003 Order, the Hobbs Act does not preclude BROADLEAF from

10

challenging that the Commission's conclusion that "residential subscribers" may be interpreted to include mobile subscribers is wrong as a matter of law.

> ii. **The Plain Language of the TCPA Prohibits the FCC's Extension of the Do Not Call Rules to Wireless Phone Numbers and *Chevron* Deference is Inapplicable**
>
>> a. **Agency Deference Under *Chevron* is Warranted Only if Congress Did Not Speak to the Precise Question**

Because the TCPA's interpretation implicates the FCC's application of a statute that it administers, the Court will apply the principles of deference described in *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984).

> We apply *Chevron* deference when an agency properly exercises its authority, expressly or implicitly delegated by Congress, to interpret an ambiguous statute, and then promulgate rules and regulations carrying the force of law. We do not apply *Chevron* deference, however, when a statutory command of Congress is unambiguous or the regulation is "arbitrary, capricious, or manifestly contrary to the statute." Where the statutory language is clear, agency regulations have no effect.

*Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1320 (11th Cir. 2011) (internal citations omitted). As the Supreme Court recently observed:

> [T]he Chevron Court explained that deference is not due unless a "court, employing traditional tools of statutory construction," is left with an unresolved ambiguity. And that too is missing: the canon against reading conflicts into statutes is a traditional tool of statutory construction and it, along with the other traditional canons we have discussed, is more than up to the job of solving today's interpretive puzzle. Where, as here, the canons supply an answer, "Chevron leaves the stage."

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) (internal citations omitted).

>> b. **The TCPA's Do Not Call Registry Provision Unambiguously Applies Only to Residential Telephones, Not Cellular Telephones**

Congress adopted the language authorizing the creation of a do-not-call registry when the TCPA was first adopted in 1991. *See* 47 U.S.C. § 227(c)(1). It required the FCC in the first part of 1992 to "initiate a rulemaking proceeding concerning the need to protect **residential** telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C.

11

§ 227(c)(1) (emphasis added). The Commission was authorized to establish and operate "a single national database to compile a list of telephone numbers of **residential** subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase." 47 U.S.C. § 227(c)(3) (emphasis added).

The legislative history of the TCPA establishes that Congress consistently distinguished between "residential" subscribers, and "wireless" subscribers. The following excerpts are illustrative:

> [The TCPA] would ban all prerecorded or automatically-dialed telephone calls to emergency, paging, or cellular telephone numbers and to residential subscribers without the express prior constant (*sic*) of the called party.

Telephone Consumer Protection Act of 1991, Senate Report, S. REP. 102-178, at 1974 (1991).

> Telemarketers also will be required to ensure that they do not place automated calls to residential customers, to emergency lines, or to cellular or paging numbers.

*Id.* at 1975.

> The reported bill will result in a significant benefit in protecting the personal privacy of residential telephone subscribers. The evidence gathered by the Committee indicates that a substantial proportion of the public believes that these calls are a nuisance and an invasion of one's privacy rights in the home. The Supreme Court has recognized explicitly that the right to privacy is founded in the Constitution, and telemarketers who place telephone calls to the home can be considered 'intruders' upon that privacy.

*Id.* at 1976.

As other courts have recognized, the TCPA clearly distinguished between residential and wireless or mobile subscribers:

> The structure of the statute makes it clear that a call can be to either a cell phone or residential line, and the statute addresses those two distinct possibilities in two different sections. Section 227(b)(1)(A)(iii) prohibits automated or prerecorded calls made "to any telephone number assigned to a ... cellular telephone service...." And Section 227(b)(1)(B) prohibits automated or prerecorded calls made "to any residential telephone line…." These side-by-side provisions anticipate calls made to two different types of phones.

\*   \*   \*

> Additionally . . . [w]hen regulating calls made to cell phones, Section 227(b)(1)(A)(iii) addresses calls made to "telephone number[s] assigned to a ... cellular telephone service...." Contrast that with how Section 227(b)(1)(B) addresses "residential telephone line[s]." Of course, cell phones are wireless, and so one does not have a cellular "line," at least in the same way one has a "landline." The statute recognizes this distinction, using a broader formulation (i.e., "number[s] assigned to ") to cover cell phones than the residential "lines" formulation that covers landlines. Shoehorning cell phones into the "residential telephone lines" portion of the statute ignores these distinctions.
> . . .
> The finely reticulated scheme discussed above creates careful categories. It would be odd if a cell phone, largely used outside the home and at work, became a residential line just because it was brought home and thereby erased those statutory categories. How frequently would it need to be used at home before it became a residential telephone line? Would it revert to its previous state as a mere cell phone if you added a landline at your house? How would these things be proved? Thankfully, these difficult questions can be avoided simply by following the natural reading of the TCPA and treating cell phones and residential lines differently.

*Morgan v. U.S. Xpress, Inc.*, No. 3:17-CV-00085, 2018 WL 3580775, at *2–3 (W.D. Va. July 25, 2018) (internal citations omitted).

In addition, when the FCC first considered whether to create a national do-not-call database after passage of the TCPA in 1991, it made no mention of wireless or cellular telephone numbers. *See In Re Tel. Consumer Prot. Act of* 1991, Notice of Proposed Rulemaking, 7 F.C.C. Rcd. 2736, ¶¶ 22-23 (1992). At that time, the Commission decided not to create a nationwide database, and any discussion of cellular or wireless telephone numbers was again absent from the FCC's Report and Order. *See In Re Rules and Regulations Implementing The Tel. Consumer Prot. Act Of 1991*, Report and Order, 7 FCC Rcd. 8752, 8758-69, ¶¶ 10-26 (1992). In 2002, the FCC revisited the issue, noting the limitation Congress placed on its delegated authority. *See* 17 F.C.C. Rcd. 17459, 17491 (2002) ("The FTC's proposal also may allow some business and wireless telephone subscribers to register on the national database. The TCPA, however, only grants authority to the Commission to establish a national database for residential subscribers.")

When the FCC approved the creation of the do-not-call database in 2003, it never concluded that Congress's intention about the database limitation on "residential" numbers was expressed unclearly when the TCPA was adopted in 1991. Instead, it sought to adopt rules in parity with the Federal Trade Commission, ignored the plain language limitation of the FCC's authority, and asserted without support that Congress must have meant to protect wireless callers too:

> We conclude that the national database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA and the Do-Not-Call Act. In so doing, we agree with the FTC and several commenters that wireless subscribers should not be excluded from the protections of the TCPA, particularly the option to register on a national-do-not-call list. Congress has indicated its intent to provide significant protections under the TCPA to wireless users. Allowing wireless subscribers to register on a national do-not-call list furthers the objectives of the TCPA, including protection for wireless subscribers from unwanted telephone solicitations for which they are charged.

2003 FCC Order at 14037.

As the Supreme Court has repeatedly held, "identical words used in different parts of the same act are intended to have the same meaning." *See Sullivan v. Stroop*, 496 U.S. 478, 484 (1990). This is precisely the case with the TCPA. Congress clearly distinguished between "residential" and "wireless" subscribers, and there is nothing in the TCPA to suggest that Congress meant something different when authorizing the FCC to create a national DNC database of "residential telephone subscribers." 47 U.S.C. § 227(c)(1).

Because Congress limited the FCC's authority to the creation of nationwide DNC Registry of residential numbers, the Commission exceeded its authority and defied the plain language of the TCPA by mandating that callers would face uncapped statutory damages for not checking the DNC Registry for wireless phone numbers. And because the FCC acted beyond its delegated authority in interpreting "residential telephone subscribers" to include "wireless subscribers," its interpretation fails *Chevron* step one and is not entitled to deference. *See United States v. Mead Corp.*, 533 U.S.

218, 226-27 (2001) ("administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."); *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("an agency literally has no power to act. . . unless and until Congress confers power upon it."); *City of Arlington Tex. v. FCC*, 569 U.S. 290, 297 (2013) (an agency's "power to act and how they are to act are authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is *ultra vires*.")

As such, FCC orders that exceed its delegated authority—as is the case with its 2003 Order interpreting "residential" subscribers to include "wireless" subscribers—are entitled to no deference. *See, e.g.*, *Motion Picture Ass'n of Am. v. FCC*, 309 F.3d 796, 801 (D.C. Cir. 2002) (holding FCC order did not qualify for *Chevron* deference because the Commission lacked statutory authority to adopt the rules contained in order). The authority to create a national do-not-call registry was clearly limited by Congress to "residential telephone subscribers", and Plaintiff's proposed National Do Not Call Registry class arising out of his first cause of action therefore fails as a matter of law because he has not limited said class to residential telephone lines only.

### III. THIS COURT LACKS SUBJECT MATTER JURISDICTION FOR CALLS ALLEGEDLY VIOLATING SECTION 227(b)(1)(A)(iii) BETWEEN 2015 AND JULY 6, 2020

The Supreme Court of the United States ruled in *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335 (2020) ("*AAPC*") that a portion of Section 227(b)(1)(A)(iii) was unconstitutional from the moment of its enactment in 2015 because it permitted robocalls in one category while prohibiting robocalls in other categories. *See*, *Creasy v. Charter Communications*,

15

___ F.Supp.3d ____, 2020 WL 576117, *2 (E.D. La. September 28, 2020). *See also*, *Lindenbaum v. Realgy*, LLC, ___ F.Supp.3d ___, WL 6361915 (N.D. Ohio October 29, 2020).

The *Creasy* and *Lindenbaum* Courts have held that, although the pre-amendment version of Section 227(b)(1)(A)(iii) was valid for time-place-manner restrictions under the First Amendment, the addition of the government debt exception in 2015 rendered the entire subsection invalid. *Creasy* at WL 576117 at *4. Thus, any robocall that was placed between 2015 and the Supreme Court's ruling on *AAPC* lacked subject matter jurisdiction and cannot be the basis for an action for damages under the TCPA. *Id* at *4-5; *Lindebaum* WL 6361915 at *4-5.

The Courts in *Creasy* and *Lindenbaum* came to this conclusion based on the reasoning that Section 227(b)(1)(A)(iii) was held to be unconstitutional by the Supreme Court in *AAPC* because it allowed a content exception for government debt collectors. This exception created a violation of free speech by effectively making illegal all non-government debt collection speech, thus making the restriction a matter of content rather than a matter of time-place-manner. The Supreme Court in *AAPC* struck down the exception. While it is clear that the statute is constitutional moving forward as of July 6, 2020, what is not clear is how the statute should be applied between 2015 and July 6, 2020 when the government debt collection amendment was active.

The Courts in *Creasy* and *Lindenbaum* held that, because government debt collectors are shielded from liability from 2015 and July 6, 2020 but all other entities can still be held liable for violations of the statute, the statute violates the First Amendment by placing a content restriction on speech. This view is in line with the dissent in *AAPC*, which the *Lindenbaum* Court cites to in the following passage:

> In an effort to mitigate at least some of these problems, the [plurality] opinion suggests that the ban on government debt collection calls announced today might be applied only prospectively. But prospective decisionmaking has never been easy to square with judicial power. And a holding that shields only government-debt

>collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate.

*Lindenbaum* at 4. Thus the *Lindenbaum* and *Creasy* Courts specifically held that the only way to ensure that Section 227(b)(1)(A)(iii) did not violate free speech between 2015 to July 6, 2020 was to not enforce it.

In the case-at-bar, the Plaintiff has alleged that a robocall was placed to his phone on June 26, 2020. The alleged robocall falls within the period between the amendment to Section 227(b)(1)(A)(iii) and the Supreme Court ruling on *AAPC*. This Court lacks the subject matter jurisdiction to enter any claim based upon the alleged June 26, 2020 robocall to the Plaintiff, and should be stricken from the First Amended Complaint as a "redundant, immaterial, impertinent, or scandalous matter." Similarly, any calls Plaintiff would seek to include in his Robocall Class should similarly be limited to calls made after the Supreme Court rendered its ruling in *AAPC*.

### IV. PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT SHOULD BE STRICKEN FROM THE RECORD

The Plaintiff's allegations that are contained within ¶¶ 10 – 17 of the First Amended Complaint are the equivalent of an argument section in a motion or a memorandum of law. Such statements clearly fall outside the scope of pleading requirements of Rule 8, Federal Rules of Civil Procedure, and constitute the type of surplusage that Rule 12(f) is designed to "clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary efforts into immaterial matters."

The Plaintiff's allegations that are contained within ¶¶ 33 – 36 are clearly designed to enflame the passions of the reader by raising prior events involving the Defendant to paint it as the "bad guy." Such allegations, even if true, ***would not be admissible*** under Rule 404, Federal Rules of Evidence. [Emphasis added]. The disputed allegations must be removed from the First

17

Amended Complaint so they are not inadvertently read to a jury during the trial phase of this matter.

## V.     CONCLUSION

BROADLEAF respectfully submits that, for the reasons set forth above, the Court should dismiss Plaintiff's First Amended Complaint or, in the alternative, strike certain portions of the Complaint.

Dated: November 30, 2020
Fort Lauderdale, Florida

Respectfully submitted by:

James A. Peterson, Esq.
PETERSON LEGAL P.A.
401 East Las Olas Boulevard
Suite 130-550
Fort Lauderdale, Florida 33301
(754) 444-8076
James@PetersonLegal.com

By: /s/ *James A. Peterson*
James A. Peterson, Esq.
Florida Bar No. 645621

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on November 30, 2020 via CM/ECF to all parties and counsel of record authorized to accept service via CM/ECF.

By: */s/James A. Peterson*
James A. Peterson

## Service List

CASE NO. 20-81698-Civ-Middlebrooks/Brannon

Avi R. Kaufman
E-Mail: kaufman@kaufmanpa.com
Rachel E. Kaufman
E-Mail: rachel@kaufmanpa.com
**KAUFMAN P.A.**
400 NW 26th Street
Miami, Florida 33127
Tel.: (305) 469-5881
Attorneys for Plaintiff
Method of Service: CM/ECF

James A. Peterson, Esq.
E-Mail: James@PetersonLegal.com
**PETERSON LEGAL P.A.**
401 East Las Olas Boulevard
Suite 130-550
Fort Lauderdale, Florida 33301
Tel.: (754) 444-8076
Attorney for Defendant